**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH　　　　　　　　　　　　　　　　　　　　　　　　　(973) 645-4693
BANKRUPTCY JUDGE　　　　　　　　　　　　　　　　　　　　　　　　　　Fax: (973) 645-2606

**NOT FOR PUBLICATION**

July 13, 2009

```
FILED
JAMES J. WALDRON, CLERK

JULY 13, 2009

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY
```

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

**Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C.**
Richard D. Trenk, Esq.
347 Mount Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
*Proposed Counsel to Debtors and Debtors-in-Possession Jeep Eagle 17, Inc., 17 Properties, L.L.C., Woo, L.L.C., and Leigh Rzasa-Ormes*

**Deily, Mooney & Glastetter, LLP**
Joann Sternheimer, Esq.
One Greentree Centre
10000 Lincoln Drive East, Suite 201
Marlton, New Jersey 08053
*Counsel to Chrysler Financial Services Americas LLC*

**United States Department of Justice**
**Office of the United States Trustee**
Donald F. MacMaster, Esq.
One Newark Center, Suite 2100
Newark, New Jersey 07102

**Herold Law, P.A.**
Gary S. Jacobson, Esq.
25 Independence Boulevard
Warren, New Jersey 07059
*Counsel to Arturi, D'Argenio, Guaglardi, & Meliti, LLP and Conrad J. Roncati*

Re:　Jeep Eagle 17, Inc., et al.
　　　Case No. 09-23708 (DHS)

Page 2
July 13, 2009

Before the Court is the application for retention filed by Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C. ("Trenk Firm") to serve as Debtor's counsel to Jeep Eagle 17, Inc. ("JEI"), 17 Properties, L.L.C. ("17 Properties"), Woo, L.L.C. ("Woo"), and Leigh Rzasa-Ormes ("Ormes") (collectively hereinafter to referred to as "Debtors"). JEI filed for Chapter 11 protection on May 28, 2009 and Woo, 17 Properties, and Ormes filed on May 29, 2009.[1] The Chapter 11 bankruptcy cases of Marie Rzasa ("Rzasa") and the Debtors have been administratively consolidated pursuant to this Court's Order dated June 3, 2009. Prior to the hearing on the instant application, the Court entered an Order dated June 9, 2009 approving the retention of the Trenk Firm as Debtor's counsel to Marie Rzasa.

The Debtors filed the standard retention application utilized in the District of New Jersey disclosing billing rates, relationship of the firm and its members to any party in interest, and stating that the Trenk Firm does not hold an adverse interest to the estate, does not represent an adverse interest to the estate and are disinterested under Section 101(14) of the Bankruptcy Code. Objections to the retention application were filed and/or raised at oral argument by DaimlerChrysler Financial Services Americas LLC ("Chrysler Financial"), the United States Trustee, and Arturi, D'Argenio, Guaglardi, & Meliti, LLP and Conrad J. Roncati ("Arturi and Roncati").

By way of background[2], Chrysler Financial holds a properly perfected security interest in substantially all of the assets of JEI. Leigh Rzasa-Ormes, the President of JEI, signed a Guaranty unconditionally guaranteeing amounts due from JEI. *See Obj. of DaimlerChrysler Fin. Servs. To Debtors' App. To Retain Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C. ("Chrysler Fin. Obj.")*, ¶¶ 1-2. Based upon a review of the Debtors' Schedules and Statement of Financial Affairs, Chrysler Financial objects to the Trenk Firm's retention due to JEI's listing of Marie Rzasa as a creditor of JEI. Furthermore, JEI disclosed pre-petition transfers to 17 Properties for $62,000.00, to Ormes for $158,000.00, and to Woo for $101,000.00. *Id.* at ¶ 10. JEI also included pre-petition transfers to third parties who are scheduled creditors of co-debtors Woo and 17 Properties, but not scheduled creditors of JEI. *Id.* at ¶¶ 12-13. Chrysler Financial alleges that these transfers may be preferential and eventually recoverable pursuant to Section 548. *Id.* at ¶¶ 11 & 14.

With respect to her individual Chapter 11 case, Ormes also scheduled Marie Rzasa as a creditor and disclosed pre-petition transfers to JEI for approximately $7,000.00. *Id.* at ¶¶ 15 & 17; *Stmt of Fin. Affairs of Leigh Rzasa-Ormes*, 09-23958 (DHS), May 29, 2009.[3] Chrysler Financial also argues that

---

[1] Debtor Marie Rzasa filed her Chapter 11 Petition on May 20, 2009.

[2] Nothing described here detailing the background of this application constitutes the Court's findings of facts with respect to any alleged transfers or the validity of claims asserted.

[3] Chrysler Financial also alleges that Ormes transferred approximately $101,000.00 to Woo. However, no such transfer is listed on Ormes' Statement of Financial Affairs. *See Stmt. of Fin. Affairs of Leigh Rzasa-Ormes*, 09-23958 (DHS), May 29, 2009. A review of JEI's Statement of Financial Affairs lists these transfers to Woo. *See*

Page 3
July 13, 2009

Ormes may be personally liable for JEI's nearly $400,000.00 in sales tax obligations and that approximately $180,000.00 may be trust fund taxes owed to the Internal Revenue Service for which Ormes could be personally liable. *Id.* at ¶ 19.

In addition, Chrysler Financial argues that the retainers for Woo and 17 Properties were paid by JEI which constitutes the utilization of Chrysler Financial's cash collateral. *Id.* at ¶¶ 26-28 Chrysler Financial states that it will seek to recover the proceeds of its collateral if warranted. *Id.* at ¶¶ 28-29. Summarily, given these transfers and obligations, Chrysler opposes the retention of the Trenk Firm as counsel to all of the jointly-administered Debtors including Marie Rzasa alleging an irreconcilable conflict of interest.

In their response, the Debtors submit that Chrysler Financial is only a creditor of JEI and not the other entities. The Debtors also contend that the potential for avoidance actions against co-debtors does not merit disqualification particularly because the expense of retaining separate counsel will be a drain on the Debtors' estates and the arguments raised regarding the third-party transfers and potential indemnity claims are not actual conflicts. With respect to the retainers, the Debtors argue that they could not be preferential payments since they were for future services, not antecedent debts.

After the Section 341(a) meeting of creditors, the United States Trustee filed its objection to the retention of the Trenk Firm. *See Obj. by United States Trustee to Debtor's App.*, at ¶ 2. In its review of the Schedules of the Debtors, Ormes is listed as a creditor of JEI and Marie Rzasa is listed as a creditor of Ormes. Ormes is also the 100% owner of JEI and 17 Properties and a 50% owner of Woo. *Id.* at ¶ 4. The creditor bodies of the Debtors are not identical but there is overlap. *Id.* at ¶¶ 4 & 13. Moreover, Ormes testified at the 341(a) meeting that inter-company claims exists and that she received loan repayments from Jeep Eagle in the year prior to filing of the Petitions. *Id.* at ¶ 4. Ormes also testified that JEI paid the retainers for all the Debtors, but not for Marie Rzasa. *Id.* The basis of the objection is that the Trenk Firm is disqualified from representing estates that have conflicting economic interests where claims may have to be challenged by one estate against another estate. *Id.* at ¶ 13.

The employment of counsel in bankruptcy cases is governed by Section 327(a) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 2014, and the local rules of professional conduct. *See In re Wheatfield Bus. Park LLC*, 286 B.R. 412, 417 (Bankr. C.D. Cal. 2002). "Bankruptcy professionals are required to examine their relationship not only based on the two-party litigation model, but also one guided by 'a stricter, fiduciary standard.'" *In re Congoleum Corp. et al.*, 426 F.3d 675, 687 (3d Cir. 2005). Section 327(a) states:

> [T]he trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate,

---

*Stmt. of Fin. Affairs of Jeep Eagle 17, Inc.*, 09-23708 (DHS), May 29, 2009.

Page 4
July 13, 2009

> and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). Section 327 applies to a debtor in possession as well as a trustee. *In re Congoleum Corp. et al.*, 426 F.3d at 689 n.13. Section 327(a) articulates a two-pronged approach when considering a retention application. *See id.* The professional (1) must not hold or represent an interest adverse to the estate and (2) must be disinterested. *See id.; In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 475 (3d Cir. 1998). In relevant part, a "disinterested person" is one that "does not have an interest materially adverse to the interest of the estate. . .by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14).[4] In addition, New Jersey's Rules of Professional Conduct 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however, that a public entity cannot consent to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;
> (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

---

[4] Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Section 101(14) defining "disinterested person" contained five subsections which included portions relevant to investment banks. The case law prior to 2005 is applicable to the instant matter as the present Section 101(14)(C) remains unchanged from pre-2005 Section 101(14)(E) with the exception of removing references to investment bankers and the subsequent re-lettering of subsections.

Page 5
July 13, 2009

> (3) the representation is not prohibited by law; and (4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

N.J. RULES OF PROF'L CONDUCT R. 1.7 (Gann Law Books 2009).

Summarily, the Third Circuit has articulated the following standard to be applied under Sections 327(a) and 101(14):

> (1) Section 327(a) as well as Section 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion–pursuant to Section 327(a) and consistent with Section 327(c)–disqualify an attorney who has a potential conflict of interest; and (3) the district court may not disqualify an attorney on the appearance of conflict alone.

*In re Marvel Entertainment Group*, 140 F.3d at 476 (reiterating *In re BH&P, Inc.*, 949 F.2d 1300 (3d Cir. 1991)).

In *BH&P*, the Third Circuit determined that the bankruptcy court has discretion in evaluating "multiple representation of related bankruptcy estates," but "should generally disapprove employment of a professional with a potential conflict, with certain possible exceptions." *In re BH&P, Inc.*, 949. F.2d 1300, 1315-16 (3d Cir. 1991) (citations omitted). The exceptions discussed were when every competent professional in a particular field is already employed by a creditor or party in interest in a large case or the possibility of a potential conflict becoming actual is remote. *Id.* The "flexible approach" utilized by the bankruptcy courts allows for determination to be made as to "whether the efficiency and economy which may favor multiple representation must yield to competing concerns affecting fairness to all parties involved and protection of the integrity of the bankruptcy process." *Id.* "[F]actors to be considered include, but are not limited to, the nature of disclosure of the conflict made at the time of appointment, whether the interests of the related estates are parallel or conflicting, and the nature of the interdebtor claims made." *Id.* In the instant retention application before the Court, the Debtor argues the efficiency and economics of multiple representations while the objecting parties are focused upon the allegations of interdebtor and intercompany claims that may have to be litigated at some later time.

*In re Star Broadcasting, Inc.* is particularly instructive here. In that case, the debtor and its principal filed for Chapter 11 protection and sought retention of the same counsel which was approved by the Court. *In re Star Broadcasting, Inc.*, 81 B.R. 835, 836 (Bankr. D.N.J. 1988). Thereafter, the cases were jointly administered and the proposed plan called for substantive consolidation. *Id.* at 836-37. At this time, an alleged noteholder raised an objection to the dual representation of the debtors but

Page 6
July 13, 2009

no formal motion for disqualification was filed. *Id.* at 837. The Debtors thereafter argued that the dual representation was appropriate and requested a court declaration that the representation does not present a conflict of interest. *Id.* The *Star Broadcasting* Court defined "interest adverse to the estate" as:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
>
> (2) to possess a predisposition under circumstances that render such a bias against the estate.

*Id.* at 838 (citing *In re Roberts*, 46 B.R. 815, 826-27 (Bankr. D. Utah 1985)). Representing an adverse interest "means to serve as agent or attorney for any individual or entity holding such an adverse interest" as defined above." *Id.*

The principal in *Star Broadcasting* intended to waive her claim against the corporate debtor through the Chapter 11 plan process. *Id.* at 840. The court found that it was speculative to accept such a waiver given that confirmation of the plan was not a certainty at the time. *Id.* at 840-41. The court noted:

> The creditors in each case have an interest in being paid. Where one estate is indebted to the other, there exist two groups of creditors which have conflicting claims and payment for one group is necessarily at the expense of the other. . .[I]f the same attorney represents both estate, he is faced with the dilemma of advising his clients to choose between conflicting duties which are as president of the corporation and as a fiduciary for the individual estate.

*Id.* at 841 (quoting *In re Hoffman*, 53 B.R. 564, 565-66 (Bankr. W.D. Ark. 1985)). In disqualifying the attorney, the court found that representing the corporate debtor and the principal, who himself is a debtor before the court and a creditor of the corporate debtor, was representation of an interest adverse to the estate and that an actual conflict existed in the dual representation. *Id.; see also In re Wheatfield Bus. Park LLC*, 286 B.R. 412, 418 (Bankr. C.D. Cal. 2002) ("Where a bankruptcy debtor is a creditor of a related debtor, it is presumptively improper for the same attorney (or law firm) to be general counsel for the related debtors.") (citations omitted).

The Court finds the decision in *In re Star Broadcasting* persuasive. Although the Debtors argue that there is no actual conflict here and only a potential conflict, obviously the facts in *Star Broadcasting* are parallel to those at hand. The Debtors seek to retain the Trenk Firm to represent the corporate entities, the principal shareholder, Ormes and the jointly affiliated debtor, Rzasa. The parties have consented to the dual representation; nevertheless, an adverse interest exists due to the claims of

Page 7
July 13, 2009

the debtors against the other estates. Objections were raised by JEI's secured creditor and by the United States Trustee. Based upon the facts before this Court including the potential inter-debtor claims and the proposed representation of a sole shareholder and a corporate debtor, the Court must find that an actual conflict exists warranting disqualification.

The Debtors argue that Ormes and Rzasa have consented to this dual representation of the individuals and the corporate entities. Although the Rules of Professional Conduct 1.7 allow for such waiver, it is not satisfactory in the instant bankruptcy case. *See In re Git-N-Go, Inc.*, 321 B.R. 54, 60 (Bankr. N.D. Okla. 2004). The Guaranty executed by Ormes and the intercompany claims are a basis to find that the consent of the parties is insufficient. *See id.* (finding that guaranteed payment by the debtor's largest shareholder created actual conflict of interest with respect to lease rejection); *In re Plaza Hotel Corp.*, 111 B.R. 882, 891 (Bankr. E.D. Cal. 1990) (noting that consent was product of same person "changing hats" and objection was raised which vitiated any consent). Consent by a Chapter 11 debtor to waive conflicts is insufficient because the ultimate parties in interest are the bankruptcy estate's creditors. *See In re Wheatfield Bus. Park LLC*, 286 B.R. at 424-25 (citing *In re Perry*, 194 B.R. 875, 879 (E.D. Cal. 1996)).

Here, the intercompany and interdebtor claims also caused concern for the objecting parties. "[W]hat may be acceptable in a commercial setting, where all of the entities are solvent and creditors are being paid, is not acceptable when those entities are insolvent and there are concerns about intercompany transfers and the preference of one entity and its creditors at. . .the expense of another." *Id.* at 418 (citing *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1018 (Bankr. N.D. Ill. 1993)). The Court cannot overlook the objections raised by Chrysler Financial and the United States Trustee with respect to the intercompany claims. A creditors' committee has not been formed in this case due to insufficient interest. If a committee had been appointed, then these interdebtor claims could possibly have been investigated and evaluated by that independent fiduciary of the estate; however, that is not a possibility in these cases at this time. *See id.* at 423-24.

The Debtor relies upon *In re Huddleston* for the proposition that the Court may make a determination on a case-by-case basis when assessing impermissible conflicts of interest between a shareholder and a corporation. *In re Huddleston*, 120 B.R. 399, 402 (Bankr. E.D. Tex., Tyler Div. (1990). In that case, the court found that dual representation was acceptable because of the "mom and pop nature of the relationship;" the dual nature of the debts did not necessarily create an actual conflict; and counsel's promise to disgorge fees upon a subsequent court finding that a conflict exists. *Id.* at 403. No doubt a case-by-case analysis is appropriate for potential conflicts; however, based upon Third Circuit precedent and the finding of an actual conflict, the Court must disqualify the Trenk Firm from representing all of the jointly-affiliated Debtors.

Given the facts presented to the Court at this time, the Court will allow for one firm to serve as counsel for the three corporate debtors: JEI, Woo, and 17 Properties. If facts arise regarding the representation of the three entities that bear on the issue of whether the estates are adverse that would warrant the Court to revisit this retention, including the intercompany claims, the Court charges counsel

Page 8
July 13, 2009

with bringing these facts to the attention of the Court, the United States Trustee, and the creditors. *See In re White Glove, Inc.*, 1998 Bankr. LEXIS 545, *14 (Bankr. E.D. Pa. Apr. 29, 1998).

Based on the actual conflict, Ormes must retain separate counsel from the corporate debtors. While the instant application was pending, the Court entered an order approving the retention of the Trenk Firm to serve as Debtor's Counsel to Marie Rzasa. This Order is hereby vacated and Rzasa must also retain separate counsel from the corporate debtors and Ormes. The Court will continue the joint administration of JEI, Woo, 17 Properties, Ormes and Rzasa.

It is emphasized that no finding of bad faith or intentional failure to disclose facts is present here. However, since substantive consolidation has not occurred, the facts as they exist leave the Court with no alternative but to deny the retention application. Therefore, the Trenk Firm is granted twenty (20) days from the entry of this Order to determine whether it will continue to represent the corporate entities or either of the individuals. The debtors-in-possession of the remaining estates will retain substitute counsel immediately thereafter. *See In re Star Broadcasting, Inc.*, 81 B.R. 835, 844 (Bankr. D.N.J. 1988). Given the acknowledged potential for intercompany claims and avoidance litigation at this early stage of these cases, the Court also seeks to avoid the possibility of likely disqualification at a later time which would result in disruption and waste of resources to the estate. *See In re Git-N-Go, Inc.*, 321 B.R. at 62. However, the Court recognizes the efforts undertaken by the Trenk Firm in filing and coordinating these Chapter 11 Petitions and will entertain a fee application with respect to services provided which benefitted these estates to date.

Very truly yours,

/s/ *Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure